■ VERONICA GALLO et al., Respondents, v LEONARD R. LINKOW et al., Appellants, et al., Defendants. [679 NYS2d 377] —Judgment, Supreme Court, New York County (Ira Gammerman, J.), entered August 12, 1997, after a jury trial, awarding plaintiffs, pursuant to their stipulation in lieu of the court's ordering a new trial on damages, damages in the amount of $650,000 for past pain and suffering, $400,000 for future pain and suffering, $17,000 for past dental expenses not covered by insurance, and $75,000 for loss of consortium, unanimously reversed, on the law, the facts, and in the exercise of discretion, without costs, the judgment vacated, and the matter remanded for a new trial on liability and damages.

This medical malpractice action was brought by plaintiff

Veronica Gallo (plaintiff)[1] against Dr. Leonard R. Linkow (Dr. Linkow or defendant),[2] the dentist who installed a dental implant in plaintiff's upper jaw in 1983 and treated her for the complications arising therefrom over the next eight years.

In October 1982, plaintiff consulted defendant about her suitability for dental implants, which are a type of prosthesis permanently anchored in the jaw. Since her upper jaw had no natural teeth and her lower jaw very few, she had been wearing a full upper denture and a partial lower denture. After successfully replacing the lower denture with an implant, defendant placed an implant in plaintiff's upper jaw on April 19, 1983. The implant was a continuous bridge of porcelain teeth attached to the jaw by four metal blades that fit into grooves cut into the bone.

Before the surgery, plaintiff signed a consent form that warned of possible side effects, including pain, infection, nasal or sinus penetration and falling of the implant. The form also notified her that the success of the implant might be affected by smoking or diet. The form did not discuss the success rate. Defendant testified that he told plaintiff that he had a 90% success rate with implants, but plaintiff testified that she had not been so informed.

Over the following eight years, until the implant was finally removed in March 1991, plaintiff suffered from numerous complications, including openings between her sinuses and the oral cavity, repeated sinus infections, mobility of the implant, mouth pain, nausea, bleeding and passage of food and water through the nose. Defendant unsuccessfully attempted to remedy these problems through a series of surgeries and procedures involving removal and alteration of parts of the implant and the insertion of synthetic bone substances (the progressive bone loss in plaintiff's jaw made it harder for the implant to stay in place). However, each intervention brought only temporary relief.

Even after the implant was removed, plaintiff experienced these symptoms until she had surgery in January 1992 to close the openings between her sinuses and her oral cavity. In addition, she claimed that the implant caused permanent bone loss that will make it harder for her to wear dentures in the future.

Plaintiff brought this malpractice action in 1992. She al-

---

**1.** Co-plaintiff Vincent Gallo's claim for loss of consortium is derivative of plaintiff's claims and therefore will not be discussed further.

**2.** Plaintiff also sued the corporations which bought Dr. Linkow's practice in 1989, because he continued to treat plaintiff as their employee until 1991. They have settled with plaintiff and have not appealed.

leged, first of all, that she had not given informed consent to the original insertion of the implant because she was not advised of the failure rate. She also alleged several negligent acts by defendant: recommending the implant to her when she was not a suitable candidate, failing to recommend removal of the implant sooner and inadequately treating the complications arising from the implant. Defendant served two bills of particulars concerning his affirmative defenses, one in August 1993 and one in February 1995. Both set forth his contention that plaintiff's injuries resulted from her own "culpable conduct," such as smoking, poor oral hygiene and failing to follow defendant's recommendations as to diet and hygiene.

Defendant served a response, dated April 7, 1997, to plaintiff's CPLR 3101 (d) demand for expert witness disclosure. The response stated defendant's intention to call an oral surgeon who was an implantologist and who would testify, *inter alia*, that plaintiff's bone loss and implant failure "were caused by factors outside of the control of defendant DR. LINKOW." Significantly, plaintiff had already received defendant's second, more detailed bill of particulars, which described at length defendant's theory that plaintiff's own conduct had caused the damage.

In May, defendant changed his attorneys and apparently his trial strategy as well. On May 22, 1997, four days before jury selection was scheduled to begin, defendant served a second CPLR 3101 (d) response indicating that he planned to call a different oral surgeon instead of the implantologist noticed previously. The witness was Dr. Rodney Leibowitz, but in keeping with standard practice, his name was not mentioned in the CPLR 3101 (d) form. Dr. Leibowitz, like the expert he replaced, would be called to testify that the injuries were "caused by factors outside of [defendant's] control."

Unfortunately, due to the recent change of counsel, defendant's new counsel had the wrong address for plaintiff. The second CPLR 3101 (d) disclosure form was not received until June 4, 1997, the very day Dr. Leibowitz was scheduled to testify. Instead of granting a continuance or some other less drastic remedy, the court completely precluded defendant from presenting Dr. Leibowitz as an expert witness. The court permitted defendant, who had already testified as a fact witness, to testify again as his own expert. Defendant did so, since his only other option was to present no expert testimony at all to counter plaintiff's expert (and thereby invite a directed verdict for plaintiff).

The court purported to limit the subject matter of defendant's

expert testimony to the subjects noticed in the first CPLR 3101 (d) response. However, the court ruled, over defense counsel's objection, that defendant (in his capacity as an expert) would not be allowed to testify about plaintiff's alleged culpable conduct and its alleged causal contribution to her injuries, because the first CPLR 3101 (d) response did not explicitly mention "culpable conduct" as a subject for expert testimony. Throughout defendant's expert testimony, the court repeatedly cut off any mention of plaintiff's smoking habit or her use of medications that contribute to bone loss in the jaw. Finally, the court refused defense counsel's request to submit to the jury the issue of whether plaintiff's culpable conduct was a cause of her injury. As a result, the court directed the jury to find for the plaintiff on the issue of causation in the event that they found defendant negligent.

The court also cut off defendant's attempt to challenge the standards on which plaintiff's expert, Dr. Peter Sherman, relied in determining that defendant had fallen below the accepted standard of care for dental implants in 1983. The standards in question were a set of guidelines developed at a conference on dental implants at Harvard University in 1978. It happened that defendant was a speaker at the conference. Dr. Sherman referred to the Harvard Guidelines in his direct testimony and discussed them more extensively in response to cross-examination. Dr. Sherman concluded that defendant was negligent in the placement of the implant. Plaintiff's counsel later referred back to the Harvard Guidelines on summation when arguing that defendant had failed to advise plaintiff of the allegedly low success rate for upper jaw implants. As a participant at this conference, defendant was well-equipped to challenge Dr. Sherman's core assertion that the Harvard Guidelines defined the relevant standard of care as of 1983. However, the court curtailed this testimony.

The jury apportioned liability 92.5% to defendant and his professional corporation (appellants herein) and 7.5% to the non-appealing co-defendants. The court granted defendant's post-trial motion to the extent of reducing the damages award by half. The judgment should be reversed. Dr. Linkow is entitled to a new trial because the conduct of his defense was prejudiced by the Trial Judge's unwarranted limitations on the defense's expert testimony and the unjustified preclusion of all reference to plaintiff's alleged culpable conduct.

It was an improvident exercise of discretion for the trial court to preclude Dr. Leibowitz's testimony as the penalty for an apparently inadvertent delay in serving the second CPLR

3101 (d) notice. A trial court has broad discretionary powers in applying this statute (*Peck v Tired Iron Transp.*, 209 AD2d 979). Preclusion is an inappropriately severe sanction when the failure to serve a timely notice is neither willful nor prejudicial to the adversary (*Flour City Architectural Metals v Sky-Lift Corp.*, 242 AD2d 471).

Here, although Dr. Leibowitz's credentials were different from those of the expert proposed in the first notice, nearly the same words were used to describe the subjects on which they would offer an opinion. Thus, it cannot be said that plaintiffs were unfairly surprised as to the content of his testimony (*Stafford v Molinoff*, 228 AD2d 662, 663). Any slight disadvantage could have been alleviated by granting a short continuance to enable plaintiffs to research Dr. Leibowitz's background (*see, Rook v 60 Key Centre*, 239 AD2d 926, 927 [further disclosure is better remedy than preclusion where initial disclosure concerning expert is inadequate]).

Instead, the court forced Dr. Linkow to serve as his own expert on very short notice, which disadvantaged him in several ways. First, the testimony of an interested defendant justifying his own conduct naturally carries less weight with the jury than an independent (even if hired) expert's opinion that that conduct was reasonable. The jury may have received the impression that no other doctor was willing to defend Dr. Linkow's treatment of plaintiff. Second, since Dr. Linkow had already testified as a fact witness, some of his statements were duplicative of his earlier testimony. At several points, the court impatiently curtailed his second round of testimony as repetitive, disregarding the fact that its own ruling had placed defendant in this position. This unfairness was only compounded by the way the court cut off defendant's attack on the Harvard Guidelines—a subject which he *was* particularly qualified to address—while allowing plaintiff's expert to discuss them at length as one of the sources of his opinion.

The trial court further improvidently exercised its discretion by precluding defense testimony on the possible role of plaintiff's alleged culpable conduct in contributing to her injuries. While the first CPLR 3101 (d) notice referred to culpable conduct somewhat vaguely as "factors outside of the control" of defendant, the bills of particulars gave plaintiffs full warning of the details to which this phrase referred. This Court has held that a party's inadvertent failure to mention an issue in an expert disclosure notice does not justify precluding expert testimony on that issue, where the party's adversary has received notice of the issue from a bill of particulars (*Misel v*

*N.F.C. Cab Corp.*, 240 AD2d 294, 295). Since this wrongly excluded testimony is crucial to the issues of causation and proportional liability for damages, on retrial the Supreme Court should not be bound by the previous court's determination of damages, nor by its direction of verdicts for plaintiff on the questions dealing with causation. Concur—Milonas, J. P., Rosenberger, Wallach, Tom and Mazzarelli, JJ.